## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

| | |
|---|---|
| Edina Development Corporation, | Chapter 11 Bankruptcy |
| Debtor. | BKY No. 06-42532 |

-----------------------------------------------------------------------------------------

### DEBTOR'S FOURTH MODIFIED PLAN OF REORGANIZATION

-----------------------------------------------------------------------------------------

## I.   INTRODUCTION

Edina Development Corporation ("Debtor") proposes the following as its Fourth Modified Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.[1]

**Defined Terms.**  Except as otherwise provided in the Plan, terms will have the meanings assigned in the Code.  The following definitions will be used for purposes of the Plan:

"Effective Date" means the first business day of the first calendar month following entry of an order confirming the Plan, unless such day would be less than seven days after entry of an order confirming the plan, in which case it means the first business day of the next succeeding month.

"Filing Date" means November 1, 2006.

"Lakeland Entities" means, collectively, LCF Development, LLC ("LCF"), Lakeland Construction Finance, LLC ("Lakeland"), and the Waitt Family Foundation Fund II, LLC ("WFF").

"Haven Property" means the Debtor's approximately 672 acre parcel of real property in Sherburne County.

"Blaine Property" means the Debtor's approximately 178 acre parcel of real property in Blaine, in Anoka County.

"Becker Property" means the Debtor's approximately 285 acre parcel of real property in Becker Township, in Sherburne County.

---

[1] Unless otherwise indicated, all statutory references are to the United States Bankruptcy Code, 11 U.S.C. §101, *et seq*. (the "Code").

# II. TREATMENT OF CLAIMS AND INTERESTS

## 2.1    Classified Claims and Interests

### Class 1 - Class of Unsecured Creditors

Class 1 consists of the general unsecured claims against the Debtor ("Class 1 Claims"). In addition to trade debt and various types of insider debt, Class 1 includes claims that are or were secured by liens on the Sandstone Ridge Property and the Foley Property. Based on a review of its schedules, books and records, and the proofs of claim filed with the Bankruptcy Court, the Debtor estimates that the total of all allowed Class 1 Claims, other than those that are subject to the conditional subordination provision applicable to insiders' claims, will be approximately $330,000.00.

### Treatment of Class 1

Subject to the limitation set forth below, the Debtor will make payments on account of allowed Class 1 Claims as follows:

(i) On the Effective Date, the Debtor will distribute the sum of $75,000.00 on a pro rata basis to the holders of Class 1 Claims;

(ii) On the first anniversary of the Effective Date, the Debtor will distribute the sum of $225,000.00 on a pro rata basis to the holders of Class 1 Claims; and

(iii) On or before the day that is ten days after it has determined in good faith that it will not realize any further or additional recovery on account of any claims asserted under a title insurance policy issued by Fidelity National Title Insurance Company, the Debtor will distribute one hundred percent of the proceeds it has recovered on account of such claims, net of costs, fees, and expenses associated with such recovery.

In no event will holders of Class 1 Claims receive any payment that, when added to the aggregate of prior payments under the Plan, would result in such holders being paid more than the full amount of their allowed claims.

### Conditional Subordination of Insider Claims

Rick Lewandowski, Lanee Lewandowski,, and MM Homebuilders, Inc. are all insider general unsecured creditors, with claims in the aggregate amount of approximately $760,000. For purposes of the Plan only, payment of all Class 1 Claims held by insiders will be subordinated to that of all other Class 1 Claims such that, unless and until all Class 1 Claims held by non-insiders have been paid in full, no payments will be made on account of the subordinated claims. In accordance with Section 1123(a)(4), each of the insider creditors who may be adversely affected by the subordination provided for herein have consented to the proposed treatment and to their inclusion in Class 1 notwithstanding the less favorable treatment of their claims.

2

**Class 2A – LCF Development, LLC (Account 400038 – Haven)**

The Class 2A Claim arises out of the Debtor's obligations to LCF under a promissory note dated September 20, 2001 in the original principal amount of $200,000.00 (the "September 20, 2001 Haven Note"). As of the September 24, 2007, the outstanding balance of the September 20, 2001 Haven Note, including accrued and unpaid interest, charges, and fees, was $229,018.62.

The Debtor's performance under the September 20, 2001 Haven Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to LCF Development, LLC as Mortgagee, to Secure $200,000.00 Note (the "September 20, 2001 Haven Mortgage"). The September 20, 2001 Mortgage was recorded on April 2, 2002 with the Office of the County Recorder of Sherburne County (Doc. No. 465282), and evidences a second priority lien on the Haven Property.

**Treatment of Class 2A Claim**

LCF will have an allowed secured Class 2A claim in the amount of $229,018.62, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2A Claim, the Plan constitutes a promissory note (the "Class 2A Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $5,000,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2A Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property, to be applied first to accrued interest and second to principal, on account of the Class 2A Note. In the event that the Debtor does not timely make the first payment under the Class 2A Note, it will deliver, upon demand, a quitclaim deed to the Haven Property to those Lakeland Entities with mortgage interests in the Haven Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 2A Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Haven Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2A Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Haven Property before the third anniversary of the Effective Date. The Class 2A Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Haven Property in excess of the aggregate debt secured by the Haven Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the

121201003v2 880207

Class 2A Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property.

The Debtor's performance under the terms of the Class 2A Note will be secured by a continuing mortgage interest in the Haven Property, with such interest being of the same priority, dignity, and effect as that of the September 20, 2001 Haven Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Haven Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Haven Property.

Upon the sale of any portion of the Haven Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the September 20, 2001 Haven Mortgage with respect to the property that is the subject of any sale, and the payments will be applied to installments under the Class 2A Note in order of maturity.

The Class 2A Note, together with the Plan, will operate as a restatement and amendment of the September 20, 2001 Haven Note, the September 20, 2001 Haven Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2A Note will be substantially similar to those included in the September 20, 2001 Note, and, to the extent not inconsistent with the terms of the Class 2A Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

**Class 2B – LCF Development, LLC (Account 400039 – Blaine)**

The Class 2B Claim arises out of the Debtor's obligations to LCF under a promissory note dated September 20, 2001 in the original principal amount of $150,000.00 (the "September 20, 2001 Blaine Note"). As of September 24, 2007, the outstanding balance of the September 20, 2001 Blaine Note, including accrued and unpaid interest, charges, and fees, was $273,030.64.

The Debtor's performance under the September 20, 2001 Blaine Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to LCF Development, LLC as Mortgagee, to Secure $150,000.00 Note (the "September 20, 2001 Blaine Mortgage"). The September 20, 2001 Mortgage was recorded on April 2, 2002 with the Office of the Registrar of Titles of Anoka County (Doc. No. 394624), and evidences a fifth priority lien on the Blaine Property.

4

**Treatment of Class 2B Claim**

LCF will have an allowed secured Class 2B claim in the amount of $273,030.64, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2B Claim, the Plan constitutes a promissory note (the "Class 2B Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2B Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 2B Note. In the event that the Debtor does not timely make the first payment under the Class 2B Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 2B Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2B Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 2B Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2B Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property.

The Debtor's performance under the terms of the Class 2B Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the September 20, 2001 Blaine Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

121201003v2 880207

Upon the sale of any portion of the Blaine Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the September 20, 2001 Blaine Mortgage with respect to the property that is the subject of the relevant sale, and the payments will be applied to installments under the Class 2B Note in order of maturity.

The Class 2B Note, together with the Plan, will operate as a restatement and amendment of the September 20, 2001 Blaine Note, the September 20, 2001 Blaine Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2B Note will be substantially similar to those included in the September 20, 2001 Blaine Note, and, to the extent not inconsistent with the terms of the Class 2B Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

**Class 2C – LCF Development, LLC (Account 400067 – Blaine)**

The Class 2C Claim arises out of the Debtor's obligations to LCF under a promissory note dated on or about March 31, 2000 in the original principal amount of $300,000.00, and originally in favor of Bromley Homes, Inc. (the "Bromley Note"). As of the September 24, 2007, the outstanding balance of the Bromley Note, including accrued and unpaid interest, charges, and fees, was $339,266.05.

The Debtor's performance under the Bromley Note is secured under that certain Mortgage Deed dated March 31, 2000, originally in favor of Bromley Homes, Inc. (the "Bromley Mortgage"). The Bromley Mortgage was recorded on April 3, 2000 with the Office of the County Recorder for Anoka County (Doc. No. 351652), and evidences a second priority lien on the Blaine Property. An Assignment of Mortgage dated April 14, 2005 was recorded with the Office of the Registrar of Titles of Anoka County on May 5, 2005 (Doc. No. 482790.001), by which the assignment of the Bromley Mortgage to LCF was made a matter of record.

**Treatment of Class 2C Claim**

LCF will have an allowed secured Class 2C claim in the amount of $339,266.05, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2C Claim, the Plan constitutes a promissory note (the "Class 2C Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2C Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property, to be applied first to accrued interest and second

6

to principal, on account of the Class 2C Note. In the event that the Debtor does not timely make the first payment under the Class 2C Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 2C Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2C Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 2C Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2C Note, and the denominator of which is the aggregate balance, as of the Filing Date, of claims that are secured by the Blaine Property and held by any of the Lakeland Entities

The Debtor's performance under the terms of the Class 2C Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the Bromley Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the Bromley Mortgage with respect to the property that is the subject of the relevant sale. Payments made under this paragraph will be applied to installments under the Class 2C Note in order of maturity.

The Class 2C Note, together with the Plan, will operate as a restatement and amendment of the Bromley Note, the Bromley Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2C Note will be substantially similar to those included in the Bromley Note, and, to the extent not inconsistent with the terms of the Class 2C Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference to such extent. By

121201003v2 880207

way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

## Class 2D – LCF Development, LLC (Account 400021 – Haven)

The Class 2D Claim arises out of the Debtor's obligations to LCF under a promissory note dated February 5, 2001 in the original principal amount of $2,025,000.00 (the "February 5, 2001 Haven Note"). As of the September 24, 2007, the outstanding balance of the February 5, 2001 Haven Note, including accrued and unpaid interest, charges, and fees, was $3,470,635.01.

The Debtor's performance under the February 5, 2001 Haven Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to LCF Development, LLC as Mortgagee, to Secure $2,025,000.00 Note (the "February 5, 2001 Haven Mortgage"). The February 5, 2001 Haven Mortgage was recorded on February 7, 2001 with the Office of the County Recorder of Sherburne County (Doc. No. 429302), and evidences a first priority lien on a 200 acre portion of the Haven Property.

## Treatment of Class 2D Claim

LCF will have an allowed secured Class 2D claim in the amount of $3,470,635.01, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2D Claim, the Plan constitutes a promissory note (the "Class 2D Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $5,000,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2D Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property, to be applied first to accrued interest and second to principal, on account of the Class 2D Note. In the event that the Debtor does not timely make the first payment under the Class 2D Note, it will deliver, upon demand, a quitclaim deed to the Haven Property to those Lakeland Entities with mortgage interests in the Haven Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 2D Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Haven Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2D Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Haven Property before the third anniversary of the Effective Date. The Class 2D Contingent

8

Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Haven Property in excess of the aggregate debt secured by the Haven Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2D Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property.

The Debtor's performance under the terms of the Class 2D Note will be secured by a continuing mortgage interest in the Haven Property, with such interest being of the same priority, dignity, and effect as that of the February 5, 2001 Haven Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Haven Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Haven Property.

Upon the sale of any portion of the Haven Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the February 5, 2001 Haven Mortgage with respect to the property that is the subject of any sale, and the payments will be applied to installments under the Class 2D Note in order of maturity.

The Class 2D Note, together with the Plan, will operate as a restatement and amendment of the February 5, 2001 Haven Note, the February 5, 2001 Haven Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2D Note will be substantially similar to those included in the February 5, 2001 Haven Note, and, to the extent not inconsistent with the terms of the Class 2D Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

**Class 2E – LCF Development, LLC (Account 400001 – Blaine)**

The Class 2E Claim arises out of the Debtor's obligations to LCF under a promissory note dated March 31, 2000 in the original principal amount of $4,135,000.00 (the "March 31, 2000 Blaine Note"). As of September 24, 2007, the outstanding balance of the March 31, 2000 Blaine Note, including accrued and unpaid interest, charges, and fees, was $9,447,721.12.

The Debtor's performance under the March 31, 2000 Blaine Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to LCF Development, LLC as Mortgagee, to Secure $4,135,000.00 Note (the "March 31, 2000 Blaine Mortgage"). The March

9

121201003v2 880207

31, 2000 Mortgage was recorded on April 3, 2000 with the Office of the Registrar of Titles of Anoka County (Doc. No. 351651), and evidences a first priority lien on the Blaine Property.

**Treatment of Class 2E Claim**

LCF will have an allowed secured Class 2E claim in the amount of $9,447,721.12, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2E Claim, the Plan constitutes a promissory note (the "Class 2E Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2E Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 2E Note. In the event that the Debtor does not timely make the first payment under the Class 2E Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 2E Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2E Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 2E Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2E Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property.

The Debtor's performance under the terms of the Class 2E Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the March 31, 2000 Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional

121201003v2 880207

documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the March 31, 2000 Blaine Mortgage with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 2E Note in order of maturity.

The Class 2E Note, together with the Plan, will operate as a restatement and amendment of the March 31, 2000 Blaine Note, the March 31, 2000 Blaine Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2E Note will be substantially similar to those included in the March 31, 2000 Blaine Note, and, to the extent not inconsistent with the terms of the Class 2E Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

**Class 2F – LCF Development, LLC (Account 394623 - Blaine)**

The Class 2F Claim arises out of the Debtor's obligations to LCF under a promissory note dated on or about January 15, 2002 in the original principal amount of $1,000,000.00 (the "$1,000,000.00 January 15, 2002 Note"). As of September 24, 2007, the outstanding balance of the $1,000,000.00 January 15, 2002 Note was $1,000,000.00.

The Debtor's performance under the $1,000,000.00 January 15, 2002 Note is secured under that certain Mortgage by Edina Development Corporation as Mortgagor, to LCF Development, LLC as Mortgagee, to Secure $1,000,000.00 Note (the "$1,000,000.00 January 15, 2002 Mortgage"). The $1,000,000.00 January 15, 2002 Mortgage was recorded on April 2, 2002 with the Office of the Registrar of Titles of Anoka County (Doc. No. 394623), and evidences a fourth priority lien on the Blaine Property.

**Treatment of Class 2F Claim**

LCF will have an allowed secured Class 2F claim in the amount of $1,000,000.00, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2F Claim, the Plan constitutes a non-interest-bearing promissory note (the "Class 2F Note"). On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2F Note, and the denominator of which is the aggregate of the Lakeland Entities' claims that are secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 2F Note. In the event that the Debtor does not timely make the first payment under the Class 2F Note, it will deliver,

121201003v2 880207

upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure. The balance of the Class 2F Note will be due and payable on the third anniversary of the Effective Date.

In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2F Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 2F Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2F Note, and the denominator of which is the aggregate balance, as of the Filing Date, of the Lakeland Entities' claims that are secured by the Blaine Property.

The Debtor's performance under the terms of the Class 2F Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the $1,000,000.00 January 15, 2002 Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the $1,000,000.00 January 15, 2002 Mortgage with respect to the property that is the subject of the relevant sale. Payments made under this paragraph will be applied to installments under the Class 2F Note in order of maturity.

The Class 2F Note, together with the Plan, will operate as a restatement and amendment of the $1,000,000.00 January 15, 2002 Note, the $1,000,000.00 January 15, 2002 Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2F Note will be substantially similar to those included in the $1,000,000.00 January 15, 2002 Note, and, to the extent not inconsistent with the terms of the Class 2F Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

121201003v2 880207

**Class 2G – LCF Development, LLC (Account 394622 - Blaine)**

The Class 2G Claim arises out of the Debtor's obligations to LCF under a promissory note dated on or about January 15, 2002 in the original principal amount of $3,000,000.00 (the "$3,000,000.00 January 15, 2002 Note"). As of September 24, 2007, the outstanding balance of the $3,000,000.00 January 15, 2002 Note was $3,000,000.00.

The Debtor's performance under the $3,000,000.00 January 15, 2002 Note is secured under that certain Mortgage by Edina Development Corporation as Mortgagor, to LCF Development, LLC as Mortgagee, to Secure $3,000,000 Note (the "$3,000,000.00 January 15, 2002 Mortgage"). The $3,000,000.00 January 15, 2002 Mortgage was recorded on April 2, 2002 with the Office of the Registrar of Titles of Anoka County (Doc. No. 394622), and evidences a third priority lien on the Blaine Property.

**Treatment of Class 2G Claim**

LCF will have an allowed secured Class 2G claim in the amount of $3,000,000.00, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2G Claim, the Plan constitutes a non-interest-bearing promissory note (the "Class 2G Note"). On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2G Note, and the denominator of which is the aggregate of the Lakeland Entities' claims that are secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 2G Note. In the event that the Debtor does not timely make the first payment under the Class 2G Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure. The balance of the Class 2G Note will be due and payable on the third anniversary of the Effective Date.

In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2G Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 2G Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2G Note, and the denominator of which is the aggregate balance, as of the Filing Date, of the Lakeland Entities' claims that are secured by the Blaine Property.

The Debtor's performance under the terms of the Class 2G Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the $3,000,000.00 January 15, 2002 Mortgage before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest

13

in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest under the $3,000,000.00 January 15, 2002 Mortgage with respect to the property that is the subject of the relevant sale. Payments made under this paragraph will be applied to installments under the Class 2G Note in order of maturity.

The Class 2G Note, together with the Plan, will operate as a restatement and amendment of the $3,000,000.00 January 15, 2002 Note, the $3,000,000.00 January 15, 2002 Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2G Note will be substantially similar to those included in the $3,000,000.00 January 15, 2002 Note, and, to the extent not inconsistent with the terms of the Class 2G Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

### Class 2H – LCF Development, LLC (Account 400040 – Blaine)

The Class 2H Claim arises out of the Debtor's obligations to LCF under a promissory note dated January, 2002 in the original principal amount of $1,000,000.00 (the "January 2002 LCF Blaine Note"). As of September 24, 2007, the outstanding balance of the January 2002 Blaine Note, including accrued and unpaid interest, charges, and fees, was $1,791,285.19.

### Treatment of Class 2H Claim

LCF will have an allowed secured Class 2H claim in the amount of $1,791,285.19, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 2H Claim, the Plan constitutes a promissory note (the "Class 2H Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 2H Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 2H Note. In the event that the Debtor does not timely make the first payment under the Class 2H Note, it will deliver, upon demand, a quitclaim deed to the

121201003v2 880207

Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 2H Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 2H Contingent Note") under which LCF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 2H Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay LCF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 2H Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property.

The Debtor's performance under the terms of the Class 2H Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as before the Filing Date. No further action need be taken by either LCF or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as LCF may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay LCF an amount equal to release prices that have been negotiated and agreed to by the Debtor and LCF. In exchange for such payments, LCF will release its interest with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 2H Note in order of maturity.

The Class 2H Note, together with the Plan, will operate as a restatement and amendment of the January 2002 LCF Blaine Note and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 2H Note will be substantially similar to those included in the January 2002 Blaine Note, and, to the extent not inconsistent with the terms of the Class 2H Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of LCF.

15

**Class 3A – Lakeland Construction Finance, LLC (Account 211598 – Haven)**

The Class 3A Claim arises out of the Debtor's obligations to Lakeland under a Real Estate Construction Note dated December 7, 2000 in the original principal amount of $285,000.00 (the "December 7, 2000 Haven Note"). As of September 24, 2007, the outstanding balance of the December 7, 2000 Haven Note, including accrued and unpaid interest, charges, and fees, was $438,784.60.

The Debtor's performance under the December 7, 2000 Haven Note is secured under that certain Mortgage, Security Agreement and Fixture Financing Statement by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $285,000.00 Real Estate Construction Note (the "December 7, 2000 Haven Mortgage"). The December 7, 2000 Mortgage was recorded on December 14, 2000 with the Office of the County Recorder of Sherburne County (Doc. No. 426370), and evidences a first priority lien on a 70 acre portion of the Haven Property.

**Treatment of Class 3A Claim**

Lakeland will have an allowed secured Class 3A claim in the amount of $438,784.60, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3A Claim, the Plan constitutes a promissory note (the "Class 3A Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $5,000,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3A Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property, to be applied first to accrued interest and second to principal, on account of the Class 3A Note. In the event that the Debtor does not timely make the first payment under the Class 3A Note, it will deliver, upon demand, a quitclaim deed to the Haven Property to those Lakeland Entities with mortgage interests in the Haven Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 3A Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Haven Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 3A Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Haven Property before the third anniversary of the Effective Date. The Class 3A Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the

121201003v2 880207

Haven Property in excess of the aggregate debt secured by the Haven Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3A Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property.

The Debtor's performance under the terms of the Class 3A Note will be secured by a continuing mortgage interest in the Haven Property, with such interest being of the same priority, dignity, and effect as that of the December 7, 2000 Haven Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Haven Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Haven Property.

In addition to the above-described scheduled payments under the Class 3A Note, upon the sale of any portion of the Haven Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the December 7, 2000 Haven Mortgage with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 3A Note in order of maturity.

The Class 3A Note, together with the Plan, will operate as a restatement and amendment of the December 7, 2000 Haven Note, the December 7, 2000 Haven Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3A Note will be substantially similar to those included in the December 7, 2000 Haven Note, and, to the extent not inconsistent with the terms of the Class 3A Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

### Class 3B – Lakeland Construction Finance, LLC (Account 211133 – Haven)

The Class 3B Claim arises out of the Debtor's obligations to Lakeland under a promissory dated December 23, 1999 in the original principal amount of $2,000,000.00 (the "December 23, 1999 Haven Note"). As of September 24, 2007, the outstanding balance of the December 23, 1999 Haven Note, including accrued and unpaid interest, charges, and fees, was $3,146,072.47.

The Debtor's performance under the December 23, 1999 Haven Note is secured under that certain Mortgage, Security Agreement and Fixture Financing Statement by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $2,000,000.00 Note (the "December 23, 1999 Haven Mortgage"). The December 23, 1999 Mortgage was recorded on March 14, 2000 with the Office of the County Recorder of Sherburne

121201003v2 880207

County (Doc. No. 409431), and evidences a first priority lien on a 200 acre portion of the Haven Property.

**Treatment of Class 3B Claim**

Lakeland will have an allowed secured Class 3B claim in the amount of $3,146,072.47, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3B Claim, the Plan constitutes a promissory note (the "Class 3B Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $5,000,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3B Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property, to be applied first to accrued interest and second to principal, on account of the Class 3B Note. In the event that the Debtor does not timely make the first payment under the Class 3B Note, it will deliver, upon demand, a quitclaim deed to the Haven Property to those Lakeland Entities with mortgage interests in the Haven Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 3B Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Haven Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will deliver a contingent promissory note (the "Class 3B Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Haven Property before the third anniversary of the Effective Date. The Class 3B Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Haven Property in excess of the aggregate debt secured by the Haven Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3B Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Haven Property.

The Debtor's performance under the terms of the Class 3B Note will be secured by a continuing mortgage interest in the Haven Property, with such interest being of the same priority, dignity, and effect as that of the December 23, 1999 Haven Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Haven Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and

18

additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Haven Property.

Upon the sale of any portion of the Haven Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the December 23, 1999 Haven Mortgage with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 3B Note in order of maturity.

The Class 3B Note, together with the Plan, will operate as a restatement and amendment of the December 23, 1999 Haven Note, the December 23, 1999 Haven Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3B Note will be substantially similar to those included in the December 23, 1999 Haven Note, and, to the extent not inconsistent with the terms of the Class 3B Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

## Class 3C – Lakeland Construction Finance, LLC (Account 481161.002 – Blaine)

The Class 3C Claim arises out of the Debtor's obligations to Lakeland under a promissory note dated December 23, 2004 in the original principal amount of $6,000,000.00 (the "$6,000,000.00 Blaine Note"). As of the September 24, 2007, the outstanding balance of the $6,000,000.00 Blaine Note, including accrued and unpaid interest, charges, and fees, was $6,000,000.00.

The Debtor's performance under the $6,000,000.00 Blaine Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $6,000,000.00 Note (the "$6,000,000.00 Blaine Mortgage"). The $6,000,000.00 Blaine Mortgage was recorded on December 30, 2004 with the Office of the Registrar of Titles of Anoka County (Doc. No. 431716), and evidences an eighth priority lien on the Blaine Property.

**Treatment of Class 3C Claim**

Lakeland will have an allowed secured Class 3C claim in the amount of $6,000,000.00, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3C Claim, the Plan constitutes a non-interest-bearing promissory note (the "Class 3C Note"). On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3C Note, and the denominator of which is the aggregate of the Lakeland Entities' claims that are secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 3C Note. In the event that the Debtor does not timely make the first payment under the Class 3C Note, it will deliver,

121201003v2 880207

upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure. The balance of the Class 3C Note will be due and payable on the third anniversary of the Effective Date.

In addition, at the time of the first payment, the Debtor will deliver a contingent promissory note (the "Class 3C Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 3C Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3C Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property.

The Debtor's performance under the terms of the Class 3C Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the $6,000,000.00 Blaine Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the $6,000,000.00 Blaine Mortgage with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 3C Note in order of maturity.

The Class 3C Note, together with the Plan, will operate as a restatement and amendment of the $6,000,000.00 Blaine Note, the $6,000,000.00 Blaine Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3C Note will be substantially similar to those included in the $6,000,000.00 Blaine Note, and, to the extent not inconsistent with the terms of the Class 3C Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference to such extent. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

121201003v2 880207

**Class 3D – Lakeland Construction Finance, LLC (Account 215978 – Blaine)**

The Class 3D Claim arises out of the Debtor's obligations to Lakeland under a promissory note dated December 23, 2004 in the original principal amount of $9,000,000.00 (the "$9,000,000.00 Blaine Note"). As of the September 24, 2007, the outstanding balance of the $9,000,000.00 Blaine Note, including accrued and unpaid interest, charges, and fees, was $11,281,598.79.

The Debtor's performance under the $9,000,000.00 Blaine Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $9,000,000.00 Note (the "$9,000,000.00 Blaine Mortgage"). The $9,000,000.00 Blaine Mortgage was recorded on December 30, 2004 with the Office of the Registrar of Titles of Anoka County (Doc. No. 431716), and evidences a seventh priority lien on the Blaine Property.

**Treatment of Class 3D Claim**

Lakeland will have an allowed secured Class 3D claim in the amount of $11,281,598.79, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3D Claim, the Plan constitutes a promissory note (the "Class 3D Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3B Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 3D Note. In the event that the Debtor does not timely make the first payment under the Class 3D Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 3D Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will deliver a contingent promissory note (the "Class 3D Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 3D Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3D

121201003v2 880207

Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property.

The Debtor's performance under the terms of the Class 3D Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the $9,000,000.00 Blaine Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the $9,000,000.00 Blaine Mortgage with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 3D Note in order of maturity.

The Class 3D Note, together with the Plan, will operate as a restatement and amendment of the $9,000,000.00 Blaine Note, the $9,000,000.00 Blaine Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3D Note will be substantially similar to those included in the $9,000,000.00 Blaine Note, and, to the extent not inconsistent with the terms of the Class 3D Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

### Class 3E – Lakeland Construction Finance, LLC (Account 211113 – Becker)

The Class 3E Claim arises out of the Debtor's obligations to Lakeland under a mortgage note dated November 12, 1999 the original principal amount of $990,000.00 (the "Becker Note"). As of September 24, 2007, the outstanding balance of the Becker Note, including accrued and unpaid interest, charges, and fees, was $1,514,834.12.

The Debtor's performance under the Becker Note is secured under that certain Mortgage, Security Agreement and Fixture Financing Statement by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $500,000.00 Real Estate Construction Note (the "Becker Mortgage"). The Becker Mortgage was recorded February 9, 2000 with the Office of the County Recorder of Sherburne County (Doc. No. 407706), and evidences a first priority lien on the Becker Property.

121201003v2 880207

**Treatment of Class 3E Claim**

Lakeland will have an allowed secured Class 3E claim in the amount of $1,514,834.12, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3E Claim, the Plan constitutes a promissory note (the "Class 3E Note"), which will include the following material terms: For the first year after the Effective Date, no payments of interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $750,000.00, to be applied first to accrued interest and second to principal, on account of the Class 3E Note. In the event that the Debtor does not timely make the first payment under the Class 3E Note, it will deliver, upon demand, a quitclaim deed to the Becker Property to those Lakeland Entities with mortgage interests in the Becker Property, or, at the Lakeland's option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 3E Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will deliver a contingent promissory note (the "Class 3E Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Becker Property yield proceeds sufficient to satisfy all debt secured by the Becker Property before the third anniversary of the Effective Date. The Class 3E Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Becker Property in excess of the aggregate debt secured by the Becker Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3E Note, and the denominator of which is the aggregate balance, as of the Filing Date, of claims that are secured by the Becker Property and held by any of the Lakeland Entities.

The Debtor's performance under the terms of the Class 3E Note will be secured by a continuing mortgage interest in the Becker Property, with such interest being of the same priority, dignity, and effect as that of the Becker Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Becker Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Becker Property.

Upon the sale of any portion of the Becker Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the Becker Mortgage with

23

respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 3E Note in order of maturity.

The Class 3E Note, together with the Plan, will operate as a restatement and amendment of the Becker Note, the Becker Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3E Note will be substantially similar to those included in the Becker Note, and, to the extent not inconsistent with the terms of the Class 3E Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

### Class 3F – Lakeland Construction Finance, LLC (Account 487502.001 - Blaine)

The Class 3F Claim arises out of the Debtor's obligations in favor of Lakeland under a promissory note dated May 8, 2006 in the original principal amount of $800,000.00 (the "May 8, 2006 Blaine Note"). As of September 24, 2007, the outstanding balance of the May 8, 2006 Blaine Note, including accrued and unpaid interest, charges and fees, was $800,000.00.

The Debtor's performance under the May 8, 2006 Blaine Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $800,000.00 Note (the "May 8, 2006 Blaine Mortgage"). The May 8, 2006 Blaine Mortgage was recorded on May 8, 2006 with the Office of the Registrar of Titles of Anoka County (Doc. No. 487502.001), and evidences a ninth priority lien on the Blaine Property.

### Treatment of Class 3F Claim

Lakeland will have an allowed secured Class 3F claim in the amount of $800,000.00, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3F Claim, the Plan constitutes a non-interest-bearing promissory note (the "Class 3F Note"). On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3F Note, and the denominator of which is the aggregate of the Lakeland Entities' claims that are secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 3F Note. In the event that the Debtor does not timely make the first payment under the Class 3F Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure. The balance of the Class 3F Note will be due and payable on the third anniversary of the Effective Date.

In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 3F Contingent Note") under which Lakeland will be

24

entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 3F Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3F Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims that are secured by the Blaine Property.

The Debtor's performance under the terms of the Class 3F Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the May 8, 2006 Blaine Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the Bromley Mortgage with respect to the property that is the subject of the relevant sale. Payments made under this paragraph will be applied to installments under the Class 3F Note in order of maturity.

The Class 3F Note, together with the Plan, will operate as a restatement and amendment of the May 8, 2006 Blaine Note, the May 8, 2006 Blaine Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3F Note will be substantially similar to those included in the Bromley Note, and, to the extent not inconsistent with the terms of the Class 3F Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

### Class 3G – Lakeland Construction Finance, LLC  (Account 431716 – Blaine)

The Class 3G Claim arises out of the Debtor's obligations in favor of Lakeland under a promissory note dated March 27, 2003 in the original principal amount of $2,000,000.00 (the "March 27, 2003 Blaine Note"). As of September 24, 2007, the outstanding balance of the May 8, 2006 Blaine Note, including accrued and unpaid interest, charges and fees, was $2,000,000.00.

The Debtor's performance under the March 27, 2003 Blaine Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance,

121201003v2 880207

LLC as Mortgagee, to Secure $2,000,000.00 Note (the "March 27, 2003 Blaine Mortgage"). The March 27, 2003 Blaine Mortgage was recorded on May 21, 2003 with the Office of the Registrar of Titles of Anoka County (Doc. No. 431716), and evidences a sixth priority lien on the Blaine Property.

**Treatment of Class 3G Claim**

Lakeland will have an allowed secured Class 3G claim in the amount of $2,000,000.00, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. The With respect to the Class 3G Claim, the Plan constitutes a promissory note (the "Class 3G Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3G Note, and the denominator of which is the aggregate of the Lakeland Entities' claims that are secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 3G Note. In the event that the Debtor does not timely make the first payment under the Class 3G Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 3G Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 3G Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 3G Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3G Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims that are secured by the Blaine Property.

The Debtor's performance under the terms of the Class 3G Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as that of the March 27, 2003 Blaine Mortgage before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and

121201003v2 880207

additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest under the Bromley Mortgage with respect to the property that is the subject of the relevant sale. Payments made under this paragraph will be applied to installments under the Class 3G Note in order of maturity.

The Class 3G Note, together with the Plan, will operate as a restatement and amendment of the March 27, 2003 Blaine Note, the March 27, 2003 Blaine Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3G Note will be substantially similar to those included in the March 27, 2003 Blaine Note Note, and, to the extent not inconsistent with the terms of the Class 3G Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

### Class 3H – Lakeland Construction Finance, LLC (Account 212366 – Rolling Woods)

The Class 3H Claim arises out of the Debtor's obligations to Lakeland under a promissory note dated March 12, 2002 in the original principal amount of $600,000.00 (the "Rolling Woods Note"). As of September 24, 2007, the outstanding balance of the Rolling Woods Note, including accrued and unpaid interest, charges, and fees, was $470,606.15.

The Debtor's performance under the Rolling Woods Note is secured under that certain First Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $600,000.00 Note (the "Rolling Woods Mortgage"). The Rolling Woods Mortgage was recorded on March 21, 2002 with the Office of the County Recorder of Olmsted County (Doc. No. A-910011), and evidences a current first priority lien on 13 undeveloped lots in the Rolling Woods development in Olmsted County, Minnesota (the subject property will be referred to as the "Rolling Woods Property").

### Treatment of Class 3H Claim

Lakeland will have an allowed secured Class 3H claim in the amount of $470,606.15, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. On the Effective Date, the Debtor will deliver to Lakeland a quitclaim deed to the Rolling Woods Property in complete and final satisfaction of the Class 3H Claim.

121201003v2 880207

**Class 3I – Lakeland Construction Finance, LLC (Account 213436 – Albertvillas 6)**

The Class 3I Claim arises out of the Debtor's obligations to Lakeland under a promissory note dated March 12, 2002 in the original principal amount of $800,000.00 (the "Albertvillas 6 Note"). As of September 24, 2007, the outstanding balance of the Albertvillas 6 Note, including accrued and unpaid interest, charges, and fees, was $1,680,144.81.

The Debtor's performance under the Albertvillas 6 Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $800,000.00 Note (the "Albertvillas 6 Mortgage"). The Albertvillas 6 Mortgage was recorded on May 8, 2006 with the Office of the County Recorder of Wright County (Doc. No. 1008637), and evidences a current first priority lien on 23 undeveloped lots in the Albert Villas 6th Addition development in Wright County, Minnesota (the subject property will be referred to as the "Albertvillas 6 Property").

**Treatment of Class 3I Claim**

Lakeland will have an allowed secured Class 3I claim in the amount of $1,680,144.81, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. On the Effective Date, in complete and final satisfaction of the Class 3I Claim, the Debtor will either: (i) deliver to Lakeland a quitclaim deed to the Albertvillas 6 Property; or (ii) submit to voluntary foreclosure.

**Class 3J – Lakeland Construction Finance, LLC (Account 211894 – Albertvillas 7)**

The Class 3J Claim arises out of the Debtor's obligations to Lakeland under a promissory note dated June 29, 2001 in the original principal amount of $405,000.00 (the "Albertvillas 7 Note"). As of September 24, 2007, the outstanding balance of the Albertvillas 7 Note, including accrued and unpaid interest, charges, and fees, was $812,864.17.

The Debtor's performance under the Albertvillas 7 Note is secured under that certain Mortgage by Edina Development Corporation, as Mortgagor, to Lakeland Construction Finance, LLC as Mortgagee, to Secure $800,000.00 Note (the "Albertvillas 7 Mortgage"). The Albertvillas 7 Mortgage was recorded on August 2, 2001 with the Office of the County Recorder of Wright County (Doc. No. 751570), and evidences a first priority lien on real property in Wright County, Minnesota (the subject property will be referred to as the "Albertvillas 7 Property").

**Treatment of Class 3J Claim**

Lakeland will have an allowed secured Class 3J claim in the amount of $812,864.17, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. From the Effective Date through June 1, 2008 interest will not accrue on the Class 3J Claim, and, from and after June 1, 2008, interest will accrue at the rate of ten percent per annum. On or before the date that is twelve months after the Effective Date, the

28

Debtor will pay the Class 3J Claim in full or will consent to voluntary foreclosure of its interest in the Albertvillas 7 Property in complete and final satisfaction of the Class 3J Claim.

**Class 3K – Lakeland Construction Finance, LLC (Account 213527 – Blaine)**

The Class 3K Claim arises out of the Debtor's obligations to Lakeland under a promissory note dated January, 2002 in the original principal amount of $1,000,000.00 (the "January 2002 Lakeland Blaine Note"). As of September 24, 2007, the outstanding balance of the January 2002 Lakeland Blaine Note, including accrued and unpaid interest, charges, and fees, was $1,547,398.24.

**Treatment of Class 3K Claim**

Lakeland will have an allowed secured Class 3K claim in the amount of $1,547,398.24, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 3K Claim, the Plan constitutes a promissory note (the "Class 3K Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $7,500,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 3K Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property, to be applied first to accrued interest and second to principal, on account of the Class 3K Note. In the event that the Debtor does not timely make the first payment under the Class 3K Note, it will deliver, upon demand, a quitclaim deed to the Blaine Property to those Lakeland Entities with mortgage interests in the Blaine Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 3K Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Blaine Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will be deemed to have delivered a contingent promissory note (the "Class 3K Contingent Note") under which Lakeland will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Blaine Property yield proceeds sufficient to satisfy all debt secured by the Blaine Property before the third anniversary of the Effective Date. The Class 3K Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay Lakeland an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Blaine Property in excess of the aggregate debt secured by the Blaine Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 3K Note, and the denominator of which is the aggregate balance of the Lakeland Entities' claims secured by the Blaine Property.

I21201003v2 880207

The Debtor's performance under the terms of the Class 3K Note will be secured by a continuing mortgage interest in the Blaine Property, with such interest being of the same priority, dignity, and effect as before the Filing Date. No further action need be taken by either Lakeland or the Debtor in order to perfect the ongoing interest in the Blaine Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Lakeland may deem necessary or appropriate in order to retain or continue its interest in the Blaine Property.

Upon the sale of any portion of the Blaine Property, the Debtor will pay Lakeland an amount equal to release prices that have been negotiated and agreed to by the Debtor and Lakeland. In exchange for such payments, Lakeland will release its interest with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 3K Note in order of maturity.

The Class 3K Note, together with the Plan, will operate as a restatement and amendment of the January 2002 Lakeland Blaine Note and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 3K Note will be substantially similar to those included in the January 2002 Lakeland Blaine Note, and, to the extent not inconsistent with the terms of the Class 3K Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Lakeland.

### Class 4 – The Waitt Family Foundation Fund II, LLC (Account 40051 – Haven)

The Class 4 Claim arises out of the Debtor's obligations to WFF under a promissory note dated May 14, 2002 in the original principal amount of $2,150,000.00 (the "WFF Note"). As of September 24, 2007, the outstanding balance of the WFF Note, including accrued and unpaid interest, charges, and fees, was $5,517,585.93.

The Debtor's performance under the WFF Note is secured under that certain Mortgage, Security Agreement and Fixture Financing Statement by Edina Development Corporation, as Mortgagor, to the Waitt Family Foundation Fund II, LLC Construction Finance, LLC as Mortgagee, to Secure $2,150,000.00 Real Estate Construction Note (the "WFF Mortgage"). The WFF Mortgage was recorded on January 16, 2003 with the Office of the County Recorder of Sherburne County (Doc. No. 493488), and evidences a first priority lien on a 200 acre portion of the Haven Property.

### Treatment of Class 4 Claim

WFF will have an allowed secured Class 4 claim in the amount of $5,517,585.93, plus accrued and unpaid interest, and less any payments of principal from and after the Filing Date, if any, or in such other amount as may be determined in accordance with the applicable provisions of the

121201003v2 880207

Bankruptcy Code. With respect to the Class 4 Claim, the Plan constitutes a promissory note (the "Class 4 Note"), which will include the following material terms: For the first year after the Effective Date, no interest or principal will be payable, but interest will accrue at the rate of 10% per annum. On the first anniversary of the Effective Date, the Debtor will pay an amount equal to $5,000,000.00, multiplied by a fraction, the numerator of which is the balance owing under the Class 4 Note, and the denominator of which is the aggregate of the Lakeland Entities' claims that are secured by the Haven Property, to be applied first to accrued interest and second to principal, on account of the Class 4 Note. In the event that the Debtor does not timely make the first payment under the Class 4 Note, it will deliver, upon demand, a quitclaim deed to the Haven Property to those Lakeland Entities with mortgage interests in the Haven Property, or, at the Lakeland Entities' option, submit to voluntary foreclosure.

After the first payment, the balance of the Class 4 Claim will be payable on the following terms: (i) interest rate of 10% per annum; (ii) 30 year amortization; and (iii) a maturity date on the third anniversary of the Effective Date. Payments from and after the first anniversary of the Effective Date will be due on the first business day of each succeeding calendar month, except to the extent that the aggregate of any payments made on account of sales of any part of the Haven Property before the date that any monthly installment would otherwise be due exceed the amount that would otherwise be due. In addition, at the time of the first payment, the Debtor will deliver a contingent promissory note (the "Class 4 Contingent Note") under which WFF will be entitled to a payment of bonus interest in the event that one or more sales of all or any part of the Haven Property yield proceeds sufficient to satisfy all debt secured by the Haven Property before the third anniversary of the Effective Date. The Class 4 Contingent Note will mature on the third anniversary of the Effective Date at which time the Debtor will pay WFF an amount equal to 15% of the aggregate net proceeds realized upon the sale of the Haven Property in excess of the aggregate debt secured by the Haven Property and the costs associated with the sales, multiplied by a fraction, the numerator of which is the balance owing under the Class 4 Note, and the denominator of which is the aggregate balance, as of the Filing Date, of the Lakeland Entities' claims that are secured by the Haven Property.

The Debtor's performance under the terms of the Class 4 Note will be secured by a continuing mortgage interest in the Haven Property, with such interest being of the same priority, dignity, and effect as that of the September 20, 2001 Haven Mortgage before the Filing Date. No further action need be taken by either WFF or the Debtor in order to perfect the ongoing interest in the Haven Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as WFF may deem necessary or appropriate in order to retain or continue its interest in the Haven Property.

Upon the sale of any portion of the Haven Property, the Debtor will pay WFF an amount equal to release prices that have been negotiated and agreed to by the Debtor and WFF. In exchange for such payments, WFF will release its interest under the WFF Mortgage with respect to the property that is the subject of any sale, and payments will be applied to installments under the Class 4 Note in order of maturity.

121201003v2 880207

The Class 4 Note, together with the Plan, will operate as a restatement and amendment of the WFF Note, the WFF Mortgage, and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations under the relevant instruments and agreements. The terms of the Class 4 Note will be substantially similar to those included in the WFF Note, and, to the extent not inconsistent with the terms of the Class 4 Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of WFF.

## Class 5 - RBP Housing, LLC

Class 5 consists of the Debtor's obligations under that certain Contract for Deed dated March 24, 2005 (the "RBP Contract") between the Debtor and RBP Housing, LLC ("RBP") under which the Debtor is purchasing 30 unimproved lots in the Fairways Fourth Addition in Benton County (the "RBP Property"). The RBP Contract was recorded on April 1, 2005 with the Office of the Benton County Recorder (Doc. No. 324651). As of the Filing Date, the aggregate of all payments due and to come due under the RBP Contract was $556,051.21. For purposes of the Plan, the Contract for Deed constitutes a first priority lien on the RBP Property.

## Treatment of Class 5 Claim

RBP will have an allowed secured Class 5 claim in the amount of $556,051.21, plus accrued and unpaid interest and other charges allowed under the RBP Contract, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 5 Claim, the Plan constitutes a modification of the payment terms under the RBP Contract such that, for the first five years after the Effective Date, interest will accrue at the rate of nine percent per annum, with annual payments calculated according to a thirty (30) year amortization schedule being due on the first through fifth anniversaries of the Effective Date until the sixth anniversary of the Effective Date, at which time all outstanding principal and interest will be due and payable.

RBP's interest in the RBP Property will continue to be evidenced by the RBP Contract as currently recorded, and neither the Debtor nor RBP will be required to take any further action to perfect RBP's interest except as may otherwise be required under applicable law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as RBP may deem necessary or appropriate in order to retain or continue its interest in the RBP Property.

Except to the extent inconsistent with the terms of the Plan, the non-monetary terms of the RBP Contract will not be altered, and will continue in full force and effect. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of RBP.

121201003v2 880207

**Class 6 – Contractors Capital Corporation (Weckerling Acres)**

The Class 6 Claim arises out of the Debtor's obligations to Contractors Capital Corporation ("CCC") under that certain Mortgage Note dated January 6, 2003 in the original principal amount of $410,000.00 (the "CCC Note").

The Debtor's performance under the CCC Note is secured under a Mortgage dated February 6, 2003 (the "CCC Mortgage"). The CCC Mortgage was recorded on December 22, 2004 with the Office of the County Recorder for Olmsted County (Doc. No. A-1048548), and represents a first priority interest in certain unimproved property in Olmsted County (the "Weckerling Acres Property").

**Treatment of Class 6 Claim**

On the Effective Date, in exchange for payment of the sum of $40,000.00, in the aggregate, from CCC and the Hasslers, the Debtor will deliver a quitclaim deed to the Weckerling Acres Property to such party or parties as CCC and the Hasslers designate. Such delivery of the deed will be in full and final satisfaction of all obligations related to the Class 6 claim.

**Class 7 – Michael & Laurie Hassler (Weckerling Acres)**

Michael and Laurie Hassler (the "Hasslers") are the holders of a claim arising out of their February 6, 2003 sale of the Weckerling Acres Property to the Debtor. $362,000.00 of the purchase price consisted of seller financing provided by the Hasslers, which is evidenced by a promissory note (the "Hassler Note"), payment of which was secured by a mortgage on the Weckerling Acres Property. The Hasslers voluntarily subordinated their mortgage to that of CCC, and the mortgage securing the Hasslers' claim is of second priority.

On or about May 12, 2005, the Hasslers commenced an action for the foreclosure of their mortgage on the Weckerling Acres Property. On or about April 21, 2006, the Hasslers and the Debtor entered into a settlement agreement, and the Debtor executed and delivered a confession of judgment to secure its performance under the settlement agreement. The confession of judgment was entered on October 26, 2006, was certified on November 16, 2006, and constitutes a second priority lien on the Weckerling Acres Property.

**Treatment of Class 7 Claim**

On the Effective Date, in exchange for payment of the sum of $40,000.00, in the aggregate, from CCC and the Hasslers, the Debtor will deliver a quitclaim deed to the Weckerling Acres Property to such party or parties as CCC and the Hasslers designate. Such delivery of the deed will be in full and final satisfaction of all obligations related to the Class 6 claim.

Confirmation of the Plan will operate as a discharge of the judgment lien currently of record in favor of the Hasslers.

33

**Class 8 - S&C Bank (Hanjo Farms Property)**

The Class 8 Claim arises out of the Debtor's obligations to S&C Bank ("S&C") under: (i) a Promissory Note dated March 29, 2004 in the original principal amount of $73,239.00; (ii) a Promissory Note dated April 11, 2005 in the original principal amount of $117,857.00; (iii) a Promissory Note dated May 19, 2006 in the original principal amount of $129,000.00 (collectively, the "S&C Notes").

The Debtor's performance under the S&C Notes is secured under the following mortgages on certain unimproved property in Polk County, Wisconsin (the "Hanjo Farms Property"): (i) that certain First Mortgage by Edina Development Corporation, as Mortgagor, to S&C as Mortgagee, to Secure $73,239.00 Note, recorded on March 30, 2004 in the Office of the Register of Deeds for Polk County, Wisconsin (Doc. No. 677285); (ii) that certain Second Mortgage by Edina Development Corporation, as Mortgagor, to S&C as Mortgagee, to Secure $117,857.00 Note, recorded on April 18, 2005 in the Office of the Register of Deeds for Polk County, Wisconsin (Doc. No. 697251); and (iii) that certain Third Mortgage by Edina Development Corporation, as Mortgagor, to S&C as Mortgagee, to Secure $129,000.00 Note, recorded on May 26, 2006 with the Office of the Register of Deeds for Polk County, Wisconsin (Doc. No. 717041).

By order entered on November 13, 2007, the Court approved the sale of the Hanjo Property on terms that included the payment of $300,000.00 out of the sale proceeds to S&C in full and final satisfaction of all claims under the S&C Notes, treatment to which S&C had consented. The sale closed on November 15, 2007, and S&C was paid in accordance with the Court's order.

**Treatment of Class 8 Claim**

S&C's claim having been satisfied out of the proceeds of a Court-approved sale, there will be no Class 8 Claim allowed under the Plan.

**Class 9 - Hanjo Farms**

Class 9 consists of the Debtor's obligations under that certain Land Contract dated March 29, 2004 between the Debtor and Hanjo Farms, Inc. ("Hanjo") under which the Debtor is purchasing the Hanjo Farms Property. The Land Contract was recorded on March 30, 2004 with the Office of the Polk County Recorder (Doc. No. 677283). As of the Filing Date, the aggregate of all payments due and to come due under the Land Contract was $90,000.00. For purposes of the Plan, the Contract for Deed constitutes a second priority lien on the Hanjo Farms Property.

By order entered on November 13, 2007, the Court approved the sale of the Hanjo Property on terms that included the payment of $80,000.00 out of the sale proceeds to Hanjo in full and final satisfaction of all claims under the Land Contract, treatment to which Hanjo had consented. The sale closed on November 15, 2007, and Hanjo was paid in accordance with the Court's order.

121201003v2 880207

**Treatment of Class 9 Claim**

Hanjo's claim having been satisfied out of the proceeds of a Court-approved sale, there will be no Class 9 Claim allowed under the Plan.

**Class 10 - Sam Montgomery (Balder Property)**

Class 10 consists of the Debtor's obligations under that certain Contract for Deed dated August 9, 2004 (the "Montgomery Contract") between the Debtor and David J. and Yvonee Balder under which the Debtor is purchasing certain real property in Benton County, Minnesota (the "Balder Property"). The Contract for Deed was recorded on October 26, 2004 with the Office of the Benton County Recorder (Doc. No. 319824). Under an Assignment of Contract for Deed and Warranty Deed dated August 8, 2006, the Balders assigned their interest in the Contract for Deed and the Balder Property to Sam R. Montgomery ("Montgomery"). As of the Filing Date, the aggregate of all payments due and to come due under the Contract for Deed was $150,641.00. For purposes of the Plan, the Contract for Deed constitutes a first priority lien on the Balder Property.

**Treatment of Class 10 Claim**

Montgomery will have an allowed secured Class 10 claim in the amount of $150,641.00, plus any additional amounts that may have accrued under the terms of the Montgomery Contract since the Filing Date, and less any payments made since the Filing Date, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 10 Claim, the Plan constitutes a modification of the payment terms under the Montgomery Contract such that, for the first five years after the Effective Date, interest will accrue at the rate of nine percent per annum, with annual payments calculated according to a thirty (30) year amortization schedule being due on the first through fifth anniversaries of the Effective Date until the sixth anniversary of the Effective Date, at which time all outstanding principal and interest will be due and payable.

Montgomery's interest in the Balder Property will continue to be evidenced by the Montgomery Contract as currently recorded, and neither the Debtor nor Montgomery will be required to take any further action to perfect Montgomery's interest except as may otherwise be required under applicable law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Montgomery may deem necessary or appropriate in order to retain or continue his interest in the Montgomery Property.

Except to the extent inconsistent with the terms of the Plan, the non-monetary terms of the Montgomery Contract will not be altered, and will continue in full force and effect. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of Montgomery.

121201003v2 880207

### Class 11 - Merritt Hage

Merritt Hage ("Hage") is the holder of a claim arising out of an interim arbitration award dated January 25, 2006 and an arbitration award dated March 3, 2006, under which Hage was awarded the amount of $259,328.96, including attorneys' fees, costs, and pre-award interest. On August 2, 2006, the Minnesota State District Court in Anoka County granted Hage's motion to confirm the arbitration award, and judgment (the "Hage Judgment") was entered on August 4, 2006, and has been docketed in eight counties.

### Treatment of Class 11 Claim

The Class 11 Claim will be satisfied upon the Lakeland Entities' payment of the sum of $162,500.00, which payment will be made on the Effective Date.

Confirmation of the Plan, together with the payment of the sum of $162,500.00, will operate as a discharge of the judgment lien currently of record in favor of Hage, and, upon his receipt of the above-referenced payment, Hage will be obligated to file and record a release of such judgment in every county in which it has been docketed and delivery to the Debtor of evidence of such release.

### Class 12 – Sonic Financial Corporation

The Class 12 Claim arises out of the Debtor's obligations in favor of Sonic Financial Corporation ("Sonic") under: (i) that certain Promissory Note dated March 5, 2004 in the original principal amount of $3,600,000.00; and (ii) that certain Promissory Note dated March 22, 2005 in the original principal amount of $125,000.00 (together, as they may have been amended from time to time, the "Sonic Notes"). As of November 30, 2007, the outstanding aggregate balance of the Sonic Notes, including accrued and unpaid interest, late fees, attorneys' fees, and loan extension fees, was approximately $4,398,647.50.

The Debtor's performance under the Sonic Notes is secured under that certain Combination Mortgage and Security Agreement (the "Sonic Mortgage"). The Sonic Mortgage was recorded on April 4, 2004 with the Office of the County Recorder for Sherburne County (Doc. No. 546977), and evidences a first priority lien on the Waters Edge Property (as defined below) and a second priority lien on the Becker Property.

The Sonic Notes were delivered in connection with the Debtor's acquisition of real property in Benton County and Sherburne County, a large portion of which was later platted under the name Waters Edge at Donovan Lake (the "Waters Edge Property"). The Waters Edge Property was later deeded to an affiliated company named Waters Edge Development, LLC ("WED"), which assumed responsibility for payment of the debt associated with the acquisition of the Waters Edge Property. The Debtor continues to be a primary obligor on the Sonic Notes, being jointly and severally liable on the Sonic Notes with WED. On October 31, 2006, WED filed a petition under Chapter 11, and by order dated April 30, 2007 the Bankruptcy Court confirmed WED's Sixth Modified Chapter 11 Plan of Reorganization (the "WED Plan"). The same obligations that

121201003v2 880207

make up the Class 12 Claim are treated as a fully secured claim to be paid in full by July 15, 2009 under the WED Plan.

**Treatment of Class 12 Claim**

Sonic will have an allowed secured claim in the amount of $4,398,647.50, together with additional interest, late fees, and attorneys' fees as accrue after November 30, 2007. With respect to the Class 12 Claim, the Plan will constitute an obligation to pay such claim in accordance with the existing loan documents between Sonic and the Debtor, as modified by the WED Plan, and with respect to which obligation the Debtor and WED will continue to be jointly and severally liable.

The Debtor's performance hereunder will be secured by a continuing second priority mortgage interest in the Becker Property, which mortgage will be junior only to the existing first priority mortgage lien in favor of Lakeland to secure the Becker Note. No further action need be taken by either Sonic or the Debtor in order to perfect Sonic's ongoing interest in the Becker Property. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as Sonic may deem necessary or appropriate in order to retain or continue its second priority mortgage interest in the Becker Property.

At any time after the Effective Date and before June 1, 2008, the Debtor may, but will not be required to, pay Sonic the sum of $1,000,000.00 (which sum will be applied by Sonic first to the loan extension fee agreed to by WED as part of the WED Plan, second to any late payment fees which have accrued or may continue to accrue under the Sonic Notes, and third to any past or future interest which has accrued or may accrue under the Sonic Notes), and, upon such payment, Sonic will be obligated to execute and deliver a satisfaction of its mortgage on the Becker Property, and the Debtor will be relieved of all further obligations owing to Sonic pursuant to the Sonic Notes.

The Plan, will operate as a restatement and amendment of the Sonic Notes and all related agreements (including, but not limited to, the WED Plan), and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations to Sonic. The terms of obligations to Sonic under the Plan will be substantially similar to those included in the Sonic Notes, as those obligations may have been modified by the WED Plan, and, to the extent not inconsistent with the terms of the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference.

**Class 13 - WHKS & Co.**

The Class 13 Claim consists of the Debtor's allegedly secured obligations to WHKS & Co. ("WHKS") under a settlement agreement dated on or about October 12, 2006. According to a proof of claim filed by WHKS, the Class 13 Claim is secured under a confession of judgment. The Debtor has been unable to confirm that the confession of judgment was filed or docketed before the Filing Date, and has requested that WHKS provide documentation to evidence the secured status of its claim. In the event that the Debtor is not able to confirm that WHKS holds a

121201003v2 880207

valid perfected lien, it may object to the Class 13 Claim, and, if the Debtor prevails in such objection, any allowed claim held by WHKS will be included in Class 1.

**Treatment of Class 13 Claim**

To the extent it is allowed as a secured claim, the Class 13 Claim will be paid on the following terms:  For the first five years after the Effective Date, interest will accrue at the rate of nine percent per annum, with annual payments calculated according to a thirty (30) year amortization schedule being due on the first through fifth anniversaries of the Effective Date until the Class 13 Note matures on the sixth anniversary of the Effective Date (the "Maturity Date"), at which time all outstanding principal and interest will be due and payable.

The Debtor's performance under the terms applicable to the Class 13 Claim will be secured by a mortgage on a 40 acre portion of the Blaine Property (the "Class 13 Mortgage").

Confirmation of the Plan will operate as a discharge of the judgment lien currently of record in favor of WHKS, and the Debtor's obligation to make payments on account of the Class 13 Claim is expressly conditioned on WHKS's release of such judgment in every county in which it has been docketed and delivery to the Debtor of evidence of such release.

**Class 14 - Wilkerson & Hegna P.L.L.P.**

The Class 14 Claim arises out of the Debtor's obligations in favor of Wilkerson & Hegna P.L.L.P. ("W&H") under that certain Mortgage Note dated September 7, 2006 in the original principal amount of $75,000.00 (the "W&H Note").

The Debtor's performance under the W&H Note is secured under a Mortgage dated January 6, 2003 (the "W&H Mortgage").  The W&H Mortgage was recorded on September 14, 2006 with the Office of the County Recorder for Wright County (Doc. No. 1025568), and represents a second priority interest in the Albertvillas 7 Property.

**Treatment of Class 14 Claim**

W&H will have an allowed secured Class 14 claim in an amount not to exceed $75,000.00, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code.  With respect to the Class 14 Claim the Plan constitutes a promissory note (the "Class 14 Note"), which will include the following material terms:  For the first five years after the Effective Date, interest will accrue at the rate of nine percent per annum, with annual payments calculated according to a thirty (30) year amortization schedule being due on the first through fifth anniversaries of the Effective Date until the Class 14 Note matures on the sixth anniversary of the Effective Date (the "Maturity Date"), at which time all outstanding principal and interest will be due and payable.

The Debtor's performance under the terms of the Class 14 Note will be secured by a continuing second priority mortgage interest in the Albertvillas 7 Property.  No further action need be taken by either W&H or the Debtor in order to perfect the ongoing interest in the Albertvillas 7

121201003v2 880207

Property, except to the extent that further action may be required by otherwise applicable state or federal law. Notwithstanding the foregoing, the Debtor will cooperate and comply with all reasonable requests related to the execution and delivery of such further and additional documents as W&H may deem necessary or appropriate in order to retain or continue their interest in the Albertvillas 7 Property.

At any time before the first anniversary of the Effective Date, the Debtor may, but will not be required to, pay the W&H an amount equal to thirty percent of the original principal balance of the Class 14 Note and deliver a mortgage on a 40 acre portion of the Blaine Property as and for security of the Debtor's payment of the balance of the Class 14 Note, and, upon such payment and delivery, W&H will be obligated to execute and deliver a satisfaction of their mortgage on the Albertvillas 7 Property.

The Class 14 Note, together with the Plan, will operate as a restatement and amendment of the W&H Note and all related agreements, and confirmation of the Plan will not operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations to W&H. The terms of the Class 14 Note will be substantially similar to those included in the W&H Note, and, to the extent not inconsistent with the terms of the Class 14 Note or the Plan, the terms of all pre-petition agreements will continue in full force and effect, and are hereby incorporated by this reference to such extent. By way of limitation, notwithstanding any term in any agreement to the contrary, neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of W&H.

## Class 15 - GMAC

The Class 15 Claim arises out of the Debtor's obligations in favor of General Motors Acceptance Corporation ("GMAC") under that certain Retail Installment Sale Contract December 16, 2003 (the "GMAC Contract") under which the Debtor financed the purchase of a 2004 Cadillac Escalade.

The Debtor's performance under the GMAC Contract is secured by a lien on the subject vehicle, which lien was properly perfected by filing with the Minnesota registrar of motor vehicles.

### Treatment of Class 15 Claim

On the Effective Date, the Debtor will cure any arrearages owing under the GMAC Contract, and will thereafter comply with all of the terms of the GMAC Contract, which terms are wholly incorporated into the Plan by this reference.

## Class 16 - Anoka County

Class 16 consists of all of the Debtor's liability for real estate taxes owing to Anoka County, Minnesota ("Anoka").

{21201003v2 880207}

**Treatment of Class 16**

Anoka will have an allowed secured Class 16 Claim in the amount of $29,813.14, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code . The Class 16 Claim will be paid in ten equal annual installments of principal and interest, with the amount of each installment being calculated on the basis of interest at the rate prescribed by Section 549.09 of the Minnesota Statutes and an amortization schedule of ten years.

**Class 17 - Benton County**

Class 17 consists of all of the Debtor's liability for real estate taxes owing to Benton County, Minnesota ("Benton").

**Treatment of Class 17**

Benton will have an allowed secured Class 17 Claim in the amount of $20,198.43, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. The Class 17 Claim will be paid in ten equal annual installments of principal and interest, with the amount of each installment being calculated on the basis of interest at the rate prescribed by Section 549.09 of the Minnesota Statutes and an amortization schedule of ten years.

**Class 18 - Olmsted County**

Class 18 consists of all of the Debtor's liability for real estate taxes owing to Olmsted County, Minnesota ("Olmsted").

**Treatment of Class 18**

Olmsted will have an allowed secured Class 18 Claim in the amount of $16,635.19, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. The Class 18 Claim will be paid in ten equal annual installments of principal and interest, with the amount of each installment being calculated on the basis of interest at the rate prescribed by Section 549.09 of the Minnesota Statutes and an amortization schedule of ten years.

**Class 19 - Sherburne County**

Class 19 consists of all of the Debtor's liability for real estate taxes owing to Sherburne County, Minnesota ("Sherburne").

**Treatment of Class 19**

Sherburne will have an allowed secured Class 19 Claim in the amount of $72,258.83, or in such other amount as may be determined in accordance with the applicable provisions of the

121201003v2 880207

Bankruptcy Code. The Class 19 Claim will be paid in ten equal annual installments of principal and interest, with the amount of each installment being calculated on the basis of interest at the rate prescribed by Section 549.09 of the Minnesota Statutes and an amortization schedule of ten years.

## Class 20 – MBE, Inc.

MBE, Inc. ("MBE") is the holder of a claim arising out of a judgment entered in the matter captioned *MBE, Inc. v. Edina Development Corporation*, Case No. 86-CV-06-3204, and docketed in Wright County, Minnesota on June 7, 2006.

### Treatment of Class 20 Claim

MBE will have an allowed secured Class 20 claim of up to $13,743.61, plus accrued and unpaid interest, and less any payments of principal made from and after the Filing Date, or in such other amount as may be determined in accordance with the applicable provisions of the Bankruptcy Code. With respect to the Class 20 Claim, the Plan constitutes a promissory note (the "Class 20 Note"), which will provide for payment of the Class 20 Claim on the following material terms: For the first five years after the Effective Date, interest will accrue at the rate of nine percent per annum, with annual payments calculated according to a thirty (30) year amortization schedule being due on the first through fifth anniversaries of the Effective Date until the Class 20 Note matures on the sixth anniversary of the Effective Date (the "Maturity Date"), at which time all outstanding principal and interest will be due and payable.

The Debtor's performance under the terms of the Class 20 Note will be secured by a mortgage on a 40 acre portion of the Blaine Property (the "Class 20 Mortgage"). The Class 20 Note, Class 20 Mortgage, and the Plan, together, will operate as a restatement and amendment of the Debtor's obligations related to the Class 20 Claim, and neither the confirmation of the Plan nor the execution of the Class 20 Note or Class 20 Mortgage will operate as a replacement or satisfaction of any of the Debtor's pre-petition obligations to MBE. Neither the commencement nor the administration of this bankruptcy case may be deemed an event of default or an event otherwise giving rise to any rights or remedies in favor of MBE.

Confirmation of the Plan will operate as a discharge of the judgment lien currently of record in favor of MBE, and the Debtor's obligation to make payments on account of the Class 20 Note is expressly conditioned on MBE's release of such judgment in every county in which it has been docketed and delivery to the Debtor of evidence of such release.

## Class 21 - Priority Claims Other Than §507(a)(1), (a)(2) and (a)(8) Claims

Class 21 consists of all timely filed and allowed priority claims other than claims asserted under Section 507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code. Other than the first $10,000.00 of Mr. Lewdowski's $450,000.00 wage claim, the priority treatment of which Mr. Lewandowski has waived, the Debtor does not believe that it is liable on any claims that would be included in Class 21.

121201003v2 880207

**Treatment of Class 21**

Class 21 Claims will be paid, in full, on the Effective Date, or on such other terms upon which any relevant creditor and the Debtor may agree.

**Class 22 – Equity Interests**

Class 22 consists of all interests arising out of or related to the equity interests in the Debtor ("Class 22 Interests"), including, without limitation, all financial and all governance rights associated with any and all outstanding stock issued at any time by the Debtor.

**Treatment of Class 22 Interests**

The Class 22 Interests will remain in place from and after the date on which an order confirming the Plan is entered.

**2.2    Impaired and Unimpaired Classes**

All classes of claims are impaired under the Plan, while the class of interests is unimpaired.

**2.3    Unclassified Claims – Description of Holders and Treatment of Claims**

**2.3.1    Pre-Petition Priority Government Claims**

"Pre-Petition Priority Government Claims" are all timely filed and allowed claims of governmental units for a pre-petition claim that is accorded a priority status pursuant to Section 507(a)(8) of the Bankruptcy Code. Pursuant to the mandates of Section 1123(a)(1) of the Bankruptcy Code, Pre-Petition Priority Government Claims are not classified in the Debtor's Plan.

**Treatment of Pre-Petition Priority Government Claim**

Pre-Petition Priority Government Claims will be paid, in full, over a term ending on or before the fifth anniversary of the Filing Date. From and after the Effective Date, Pre-Petition Priority Government Claims will accrue interest on the terms and at the rate provided for in 26 U.S.C. §6621(b), and will be paid in periodic payments so that such claims are fully amortized and paid in full over a period ending not later than the date that is five years after the Filing Date.

**2.3.2    Administrative Expenses**

"Administrative Claim" means any claim for the payment of any administrative expense arising under Section 503(b) of the Bankruptcy Code.

Subject to the specific terms set forth below, the Debtor will pay each holder of an allowed Administrative Claim (except any such holder that agrees to different treatment) the allowed amount of such holder's allowed Administrative Claim, in cash, on the Effective Date; provided,

42

however, that allowed Administrative Claims representing post-petition liabilities incurred in the
ordinary course of business by the Debtor will be paid as they come due.

**(a)    Professional Fees**

Professional fees that constitute Administrative Claims are the allowed fees and costs of the
professionals that have been employed in the course of the Bankruptcy Case.

Allowed professional fees will be paid in full in cash on the Effective Date, or on such date as
the Court may fix, or upon such other terms as may be agreed upon by the professional and the
Debtor. The Debtor currently projects that professional fees will be paid out of the proceeds of
the Exit Loan described below.

**(b)    U.S. Trustee Fees and Court Costs**

U.S. Trustee fees and court costs that constitute Administrative Claims are those obligations
imposed by operation of 28 U.S.C. §1930 (all such fees and costs will be referred to as "U.S.
Trustee Fees").

The Debtor will pay all U.S. Trustee Fees owed by the Debtor, as and when due, until this
Bankruptcy Case is closed. In addition, the Debtor will continue to comply with all reporting
requirements imposed by the U.S. Trustee until this Bankruptcy Case is closed.

**(c)    Other Administrative Expense Claims**

There may be other Administrative Claims, such as the following: (1) filed proofs of claim for
administrative expenses; (2) post-petition taxes; (3) unpaid post-petition claims incurred in the
ordinary course of business; and (4) certain claims associated with executory contracts and
unexpired leases (the treatment of claims arising out of executory contracts and unexpired leases
is more fully described in Section 3.5 below) (all of the foregoing will be referred to as "Other
Administrative Claims"). The Debtor has remained current on all of its post-petition obligations,
and does not believe that it is liable on any Other Administrative Claims.

To the extent that there are any allowed Other Administrative Claims, such claims will be paid,
in full and in cash, on the Effective Date, or as otherwise agreed to by the Debtor and the
claimant, subject to the following exception: For claims incurred in the ordinary course of
business after the Filing Date, the Debtor will pay such claims as they become due, or otherwise
in the ordinary course of Debtor's business.

**2.4    Executory Contracts and Unexpired Leases**

The treatment of the various executory contracts and unexpired leases to which the Debtor is a
party is specified in the Schedule of Executory Contracts and Leases, attached as Exhibit A.

From and after the date on which an order confirming the Plan is entered, the Debtor will timely
perform its obligations according to the terms of all assumed contracts, as the same may be

43

modified by the terms of the Plan. Notwithstanding the foregoing, with respect to arrearages outstanding as of the date on which a contract or lease is assumed, the Debtor will cure such arrearages promptly after the Effective Date, or as otherwise agreed to by the Debtor and the other party to any affected contract.

As to rejected contracts and leases, the parties to such contracts and leases may have claims arising under the terms of the relevant agreement, or arising from the rejection of the contract or lease, or both. In accordance with the provisions of the Bankruptcy Code, any claim based on the rejection of an executory contract or unexpired lease will be treated as an unsecured claim. Unless otherwise ordered by the Court, the deadline for filing a proof of claim for any such claim arising from rejection of a contract or lease will be fixed at 30 days from the date on which an order confirming the Plan is entered. THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

**Contracts and Leases not Specified**

If the Debtor is a party to any executory contracts or unexpired leases that are not specifically identified in the Schedule of Executory Contracts and Leases, the Debtor will REJECT all such executory contracts and unexpired leases, with the following exceptions: (i) except as may be provided for in any prior Court order entered with respect to a motion for assumption or rejection of such executory contract or unexpired lease, and (ii) except as may be provided for in any motion pending before the Bankruptcy Court on the date of the hearing on confirmation of the Plan. Except as may be provided otherwise herein, such rejection will be effective as of the date on which an order confirming the Plan is entered.

## III. PROOFS OF CLAIMS AND OBJECTIONS TO CLAIMS

Unless otherwise ordered by the Bankruptcy Court, the deadline by which administrative claims must be timely filed is thirty days after the date on which an order confirming the Plan is entered. Administrative expense claims must be asserted by motion filed and served by the deadline set forth herein. SUBJECT TO SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, THIS INFORMATION CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING ADMINISTRATIVE EXPENSE CLAIMS.

Claims for damages arising out of the rejection of executory contracts and unexpired leases must be asserted by the filing of a proof of claim within thirty days after the date on which an order confirming the Plan is entered. Parties to executory contracts and unexpired leases that have been or may yet be rejected by the Debtor, by motion or otherwise, at or before confirmation must file proofs of claims for any damages from such rejection in accordance with the Bankruptcy Court's order approving such rejection, or, if the order does not so provide, pursuant to the terms of this paragraph. THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

121201003v2 880207

## IV.  POST CONFIRMATION

### 4.1    Means for Execution

#### 4.1.1    Plan Funding

**a.    Exit Financing.** On or before the day that is five days before the Effective Date, one or more of the Lakeland Entities will loan the Debtor the sum of $450,000 (the "Exit Loan").  The terms of the Exit Loan will be commemorated in a promissory note including the following material terms: (i) interest will accrue at the rate of ten percent per annum; (ii) no payments will be due until maturity; and (iii) the Exit Loan will mature at the same time that the Class 3E Claim matures.  The Debtor's obligations under the Exit Loan will be secured by a mortgage interest in the Becker Property.  As a condition of funding the Exit Loan, the Lakeland Entities may require the Debtor to execute quitclaim deeds and voluntary foreclosure agreements with respect to the property that is subject to the Lakeland Entities' mortgages, and to deliver the same to an  escrow or similar agent for release upon any default by the Debtor that would otherwise require the Debtor to execute and deliver such instrument.

**b.    Claims of the Debtor.** The Debtor will retain all claims that were property of the estate.

#### 4.1.2    Settlement Agreement.
Confirmation of the Plan will constitute Court approval of the reciprocal release and settlement of all claims that the Debtor and any of the Lakeland Entities may have against each other as of the date on which an order confirming the Plan is entered, with the exception of those claims specifically addressed and provided for in the Plan.  Without limiting the generality of the foregoing, all of the claims and counterclaims that the parties have asserted or could assert in the pending adversary proceeding captioned *Edina Development Corporation v. Lakeland Construction Finance, LLC,* Adv. No. 06-4520 will be released, and within ten days after confirmation of the Plan the Debtor will file a notice of voluntary dismissal of such action.

#### 4.1.3    Plan Distributions

The distributions under the Plan will be made by the Debtor on the dates provided for in the Plan, or on such earlier dates as the Debtor, in its sole discretion, may choose.  The Debtor reserves and retains the right to prepay any obligation under the Plan without penalty.  Any payment or distribution required to be made under this Plan on a day other than a business day will be made on the next succeeding business day, or as soon thereafter as practicable.

The Debtor will not be required to make any payment or distribution on account of any disputed claim, until the dispute has been resolved and then, only to the extent that the disputed claim becomes an allowed claim, whether by agreement of the parties or by final order of the Bankruptcy Court.  As soon as practicable after the disputed claim is resolved by the Debtor or the parties, or allowed by agreement or final order, and subject to the terms of the Plan, the Debtor will pay and distribute to the holder of such allowed claim the amount provided in the Plan in the manner provided in the Plan, subject to the following condition:  The Debtor may choose, in the alternative, to make any additional payment or distribution to the creditor holding

121201003v2 880207

a previously disputed allowed claim to bring distributions on account of such claim current with where they would have been had the claim never been subject to objection.

In the event that any property to be distributed under the Plan remains unclaimed or otherwise not deliverable to a creditor entitled thereto as of the later of: (a) one year after the date on which an order confirming the Plan is entered; or (b) one hundred twenty (120) days after any distribution called for under the terms of the Plan, such property will become vested in and will be transferred and delivered to the Debtor. Unclaimed property includes, but is not limited to, checks issued pursuant to the Plan and not negotiated within ninety (90) days of the date such check was issued.

The Debtor will withhold from any property distributed under this Plan, any amounts required to be withheld for federal, state, or local taxes. The issuance, transfer or exchange of any of the securities issued under, or the transfer of any other property pursuant to this Plan, or the making or delivery of an instrument of transfer under this Plan, is exempt from application of any law imposing a stamp tax, transfer tax, or other similar tax.

Except as expressly stated in the Plan or otherwise allowed by a final order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Filing Date will be allowed on any claim, regardless of whether any objection to the claim is filed and sustained. No attorneys' fees will be paid with respect to any claim except as specified in the Plan, or as allowed by a final order of the Bankruptcy Court. Accordingly, payments and distributions under the Plan will not include, provide for, or otherwise take into account any such interest, penalty, late charge, or attorneys' fees.

Distributions to be made under this Plan to holders of allowed claims will be made by first class United Sates mail, postage prepaid to (a) the latest mailing address set forth in the schedules if no proof of claim was filed with respect to such claim; or (b) to the address appearing on a proof of claim as the address to which notices should be sent if a proof of claim was filed with respect to such claim. Distributions will be deemed made as of the time they are deposited in the United States mail.

Any notices related to the Plan should be addressed as follows:

> Edina Development Corporation
> Attn. Rick Lewandowski
> 700 Bunker Lake Blvd.
> Anoka, MN 55303

## 4.1.4   Setoffs

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but will not be required to, setoff against any claim and the payments or other distributions to be made pursuant to the Plan in respect of such claim, claims of any nature whatsoever the Debtor may have against the holder of such claim. Neither the failure to setoff, nor the allowance of any

121201003v2 880207

claim hereunder will constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder.

### 4.1.5   Continued Existence

After the Effective Date, the Debtor will continue to exist in accordance with the applicable law in the jurisdiction in which it is incorporated and pursuant to its articles, bylaws, and other organization documents in effect prior to the Effective Date, except to the extent such articles, bylaws, or other organization documents are amended or modified pursuant to the Plan.  The articles, bylaws, and other organizational documents will be and hereby are amended and restated as necessary to satisfy the provisions of the Plan and the Bankruptcy Code.  After the Effective Date, the Debtor may, but will not be required to, amend or restate its articles and bylaws as permitted by applicable law, provided that such amendment or restatement may not conflict with any provisions of the Plan.  On the Effective Date, all actions contemplated by the Plan will be authorized and approved in all respects, and all matters provided for in the Plan involving the corporate structure of the Debtor will be deemed to have occurred and will be in effect, without any requirement of further action by the equity holders, directors, or officers of the Debtor.  As of the date on which an order confirming the Plan is entered, the officers and directors of the Debtor are authorized to issue, execute, and deliver the agreements, documents, and other instruments contemplated by the Plan.

Without limiting the generality of the foregoing, as of the Effective Date, the Debtor's articles will be deemed to have been amended, to the extent necessary, and as consistent with the requirements of Section 1123(a)(6) of the Bankruptcy Code, to prohibit the issuance of nonvoting securities, and to authorize the number of shares necessary to comply with the terms of the Plan.

### 4.1.6   Management and Compensation of Management

From and after the Effective Date of the Plan, the operations of the Reorganized Debtor will be managed by the board of directors as it was constituted as of the Filing Date.  In addition to his continuing role as Debtor's only director, Rick Lewandowski will continue to be the only officer of the Debtor, and will be paid an annual salary of $180,000.00 on account of his services.  The Debtor reserves the right to give its officers and directors periodic raises, provided that such raises are for the limited purpose of maintaining substantial salary uniformity, on an adjusted dollar basis, during the term of the Plan.  In light of the foregoing stated purpose for salary increases, during the term of the Plan, no increase in the salary of an officer or director will deviate substantially from the proportionate increase in the Consumer Price Index during the period between the date on which the proposed raise is to take effect and the later of: (i) the Effective Date, and (ii) the most recent date on which the officers or directors were given a raise.

In addition to his salary, Mr. Lewandowski will be entitled to all of the employment-related benefits offered to the Debtor's other full time employees.

121201003v2 880207

### 4.1.7   Equity Structure of Reorganized Debtor

From and after the Effective Date, the equity structure of the Debtor will be substantially identical to its equity structure as of the Filing Date.

### 4.1.8   Implementation of Plan

The Plan will be implemented upon entry of an order confirming the Plan.

The Plan may be modified in the manner provided for under Section 1127 of the Code. The Debtor will give notice of any proposed modification to the United States Trustee and to any other parties designated by the Court. The Debtor reserves the right to make such modifications at any hearing on confirmation as may be necessary to facilitate confirmation of the Plan.

The Debtor's obligations under the Plan are contingent upon entry of an order confirming the Plan, and said order not being stayed, appealed, or otherwise challenged before the expiration of the applicable deadline; provided, however, that the Debtor may, in its sole discretion, choose to undertake and perform its obligations under the Plan notwithstanding the pendency of an appeal.

The Debtor's obligations under the Plan are contingent upon entry of an order confirming the Plan.

### 4.2      Reservation of Rights, Powers and Jurisdiction

### 4.2.1   Rights and Powers

Except as otherwise expressly provided in the Plan, the Debtor will retain, after confirmation of the Plan, full right and power to do any of the following:

(a)      Object to the allowance of claims;

(b)      Seek subordination of claims;

(c)      Pursue any claims against third parties, including, but not limited to those based on theories of preference, fraudulent transfer, or any other action arising under Chapter 5 of the Bankruptcy Code;

(d)      Pursue any claims and enforce any rights arising under the Bankruptcy Code in favor of a trustee or debtor-in-possession; and

(e)      Pursue any causes of action that the Debtor may have as of the date on which an order confirming the Plan is entered. Any and all causes of action that the Debtor may have had prior to confirmation of the Plan will survive confirmation of the Plan, will vest in the Debtor as of confirmation of the Plan, and will not be affected by confirmation or the passing of the Effective Date of the Plan, except as otherwise specifically provided in the Plan.

121201003v2 880207

The Debtor may object to the allowance of claims within the time period provided for in the order confirming the plan, or as otherwise dictated by order of the Court. The Debtor's authority to object to the allowance of claims will not be affected in any way by the Debtor's failure to object to allowance of any claim for purposes of voting.

### 4.2.2   Court Approval

After confirmation of the Plan, the Debtor may, but will not required to, seek the Court's approval of any of the following:

(a)    settlements regarding objections to claims;

(b)    settlements regarding claims against third parties;

(c)    settlements regarding allowance of fees and expenses incurred by professionals employed during the pendency of the Bankruptcy Case.

If the Debtor chooses to seek court approval of any such settlements, the Debtor will not be required to provide notice to creditors as would typically be provided during the chapter 11 case or to file and serve a motion for the approval of the settlement. Instead, the Debtor will be authorized to seek approval by filing a stipulation setting forth the material terms of the settlement, along with a proposed order providing for the approval of such stipulation.

### 4.2.3   Jurisdiction

Until the Plan has been fully consummated, the court will retain jurisdiction over, and the Debtor will retain standing and the right to pursue any cause of action, proceeding, or other request for relief related to the following:

(a)    classification of the claims of creditors;

(b)    determination of the allowed amount of any claims arising before or during the pendency of the Bankruptcy Case;

(c)    subordination of the allowed claims of creditors;

(d)    determination of any counterclaims against any creditor, including any claim for turnover of property of the Debtor and any claim for offset of the value of the property against the claim of the creditor;

(e)    determination of the allowed amount of claims for damages from the rejection of executory contracts or unexpired leases;

(f)    determination of all issues and disputes regarding title to the assets of the estate and the Debtor;

121201003v2 880207

(g)    determination of all causes of actions between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code, and to avoid any preferential or fraudulent transfers;

(h)    correction of any defect, the curing of any omission or the reconciliation of any inconsistency of the Plan or the order confirming the Plan as may be necessary to carry out the purpose and intent of the Plan;

(i)    interpretation and enforcement of the terms of the Plan;

(j)    shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

(k)    entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtor;

(l)    entry of an order concluding and terminating the case;

(m)    approval of any settlement related to any of the foregoing; and

(n)    any dispute related to the terms under which all or any of the Lakeland Entities agree to release all or any portion of their respective interests in any of the Debtor's real property.

The Debtor's transfer or assignment of any interests or rights will not affect the Court's retention of jurisdiction to the full extent provided herein.

**4.3    Effects of Plan Confirmation**

**4.3.1    Binding Effect**

The Plan will be binding upon and inure to the benefit of the Debtor, all present and former holders of claims against, or interests in, the Debtor, and all respective successors and assigns.

**4.3.2    Discharge and Injunction**

TO THE FULL EXTENT PROVIDED FOR IN SECTION 1141 OF THE CODE, AND ONLY TO SUCH EXTENT, CONFIRMATION OF THIS PLAN CONSTITUTES A COMPLETE DISCHARGE, WAIVER, RELEASE, AND SATISFACTION OF ALL CLAIMS AGAINST AND INTERESTS IN THE DEBTOR EXCEPT AS PROVIDED IN THIS PLAN. THE DISCHARGE WILL OPERATE TO RELEASE AND EXTINGUISH ANY PURPORTED LIENS, ENCUMBRANCES, OR SECURITY INTERESTS CLAIMED BY A CLAIMANT OR ANY OTHER ENTITY AGAINST PROPERTY OF THE DEBTOR, PROPERTY DEALT WITH BY THE PLAN, AND PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN. THE ORDER CONFIRMING THE PLAN IS A GENERAL ADJUDICATION AND RESOLUTION WITH PREJUDICE OF ALL PENDING

121201003v2 880207

LEGAL PROCEEDINGS AGAINST THE DEBTOR, PROPERTY OF THE DEBTOR, OR PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.

THE DISCHARGE AND THE ORDER CONFIRMING THE PLAN OPERATE AS AN INJUNCTION TO THE EXTENT PROVIDED IN SECTION 524 OF THE BANKRUPTCY CODE, AND ONLY TO SUCH EXTENT.  ANY CREDITOR OR EQUITY HOLDER ENTITLED TO RECEIVE ANY DISTRIBUTION PURSUANT TO THIS PLAN WILL BE PRESUMED CONCLUSIVELY TO HAVE RELEASED THE DEBTOR FROM ANY CLAIM RELATED TO THAT WITH RESPECT TO WHICH THE DISTRIBUTION IS MADE.  THIS RELEASE WILL BE ENFORCEABLE AS A MATTER OF CONTRACT AGAINST ANY CREDITOR OR EQUITY HOLDER THAT ACQUIRES ANY RIGHT TO DISTRIBUTION PURSUANT TO THIS PLAN.

SUBJECT TO ANY LIMITATIONS PROVIDED FOR IN THE BANKRUPTCY CODE, UNLESS A TAXING AUTHORITY HAS ASSERTED A CLAIM AGAINST THE DEBTOR BEFORE THE DEADLINE FOR FILING CLAIMS, CONFIRMATION OF THE PLAN WILL OPERATE AS A DISCHARGE OF ANY CLAIM OR LIEN OF ANY TAXING AUTHORITY AGAINST THE DEBTOR, THE ESTATE, ANY PROPERTY OF THE DEBTOR, AND ANY PROPERTY OF THE ESTATE, FOR ANY TAXES, PENALTIES, OR INTEREST: (I) FOR ANY TAX YEAR FOR A PERIOD BEFORE THE FILING DATE; (II) ARISING OUT OF THE FAILURE OF THE DEBTOR TO FILE ANY TAX RETURN; OR (III) ARISING OUT OF AN AUDIT OF ANY TAX RETURN WITH RESPECT TO A PERIOD BEFORE THE FILING DATE.

### 4.3.3   Re-Vesting

Subject to the terms of the Plan, on the date that the order confirming the Plan is entered, the Debtor will be restored to full ownership of all property owned by the Debtor, all property of the estate, and all property dealt with by the Plan.  The property so vested in the Debtor will be free and clear of all claims, liens, encumbrances, charges, and other interests of holders of claims or interests, except as otherwise provided in the Plan.

On and after the date on which the order confirming the Plan is entered, the Debtor may freely operate its business and may freely use, acquire, and dispose of property of the estate and property of the Debtor, except as otherwise provided in the Plan.  Except as may otherwise be expressly provided for in the Plan or by order of the Court, the Debtor's operation of its business and use of property will not be subject to any restrictions imposed by operation of the Bankruptcy Code, the Bankruptcy Rules, or any prior Bankruptcy Court order entered during the bankruptcy case.

[Signature page to follow]

121201003v2 880207

Dated: January 11, 2008

EDINA DEVELOPMENT CORPORATION

Richard Lewandowski
Its President

HINSHAW & CULBERTSON LLP

By:    /s/ Thomas G. Wallrich
        Thomas G. Wallrich (213354)
        Joel D. Nesset (030475X)
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
(612) 333-3434

Attorneys for Edina Development Corporation

121201003v2 880207

# EXHIBIT A - SCHEDULE OF EXECUTORY CONTRACTS

The Debtor is party to the contracts described below. To the extent that they are executory contracts, the contracts specified will be assumed or rejected on the terms described below.

## Elan Leasing Services – Equipment Leases

The Debtor and Elan Leasing Services ("Elan") are parties to the following equipment leases (the "Elan Leases"):

> Lease commencing on April 7, 2005, under which the Debtor agreed to pay $38.50 per month for 36 months for the use of a Inspiron 6000D Processor supplied by Dell;

> Lease commencing on April 7, 2005, under which the Debtor agreed to pay $77.00 per month for 36 months for the use of two Inspiron 6000D Processors supplied by Dell;

> Lease commencing on October 15, 2005, under which the Debtor agreed to pay $624.25 per month for 36 months for the use of a 2004 Q4 Server and Email Project supplied by Intuit; and

> Lease commencing on January 21, 2005, under which the Debtor agreed to pay $244.17 per month for 36 months for the use of 4 Optiplex GX 2080s supplied by Dell.

All of the Elan Leases provide that the Debtor may purchase the equipment being leased for one dollar after all of the regular lease payments have been made.

Elan will have the option under the Plan of either of the two alternative forms of treatment described below:

**Elan Option 1:** Under Elan Option 1, the Debtor will reject the Elan Leases, with such rejection being effective as of the Effective Date. At the time of rejection, the Debtor will and make all of the equipment that is the subject of those leases available for retrieval by Elan.

**Elan Option 2:** Under Elan Option 2, Elan will consent to the Debtor's assumption of the Elan Leases and contemporaneous modification of their terms such that the Debtor will be deemed to have satisfied all of its obligations arising out of or related to the Elan Leases upon its payment to Elan of the sum of $5,000.00 on the Effective Date. Without limiting the generality of the foregoing, the Debtor's payment of the prescribed amount will be in full and final satisfaction of all cure obligations, all future installments of rent and other charges accruing during the term of the leases, and obligations associated with the exercise of the purchase option under the leases, and upon such payment to Elan all of the equipment that is the subject of the Elan Leases will vest in the Debtor free and clear of all liens and other interests.

121201003v2 880207

**Ikon Financial Services – Equipment Lease**

The Debtor and Ikon Financial Services are parties to a Lease Agreement dated December 16, 2004 (the "Ikon Lease"), under which the Debtor agreed to pay $170.00 per month for 36 months for the use of a Savin 3515F copier. The Ikon Lease provides that, after the initial term, it will renew on the same material terms for one month periods until either party gives notice.

Ikon will have the option under the Plan of either of the two alternative forms of treatment described below:

**Ikon Option 1:** Under Ikon Option 1, the Debtor will reject the Ikon Lease, with such rejection being effective as of the Effective Date. At the time of rejection, the Debtor will and make all of the equipment that is the subject of those leases available for retrieval by Ikon.

**Ikon Option 2:** Under Ikon Option 2, Ikon will consent to the Debtor's assumption of the Ikon Lease and contemporaneous modification of their terms such that a purchase option will be granted to the Debtor and the Debtor will be deemed to have satisfied all of its obligations arising out of or related to the Ikon Lease upon its payment to Ikon of the sum of $4,000.00 on the Effective Date. Without limiting the generality of the foregoing, the Debtor's payment of the prescribed amount will be in full and final satisfaction of all cure obligations, all future installments of rent and other charges accruing during the term of the lease, and obligations associated with the exercise of the purchase option under the lease, and upon such payment to Ikon all of the equipment that is the subject of the Ikon Lease will vest in the Debtor free and clear of all liens and other interests.

**IOS Capital – Equipment Lease**

The Debtor and Ikon Financial Services are parties to a Lease Agreement dated April 1, 2004 (the "IOS Lease"), under which the Debtor agreed to pay $302.00 per month for 48 months for the use of an Image Runner 3300 copier. The IOS Lease provides that, after the initial term, it will renew on the same material terms for one month periods until either party gives notice.

IOS will have the option under the Plan of either of the two alternative forms of treatment described below:

**IOS Option 1:** Under IOS Option 1, the Debtor will reject the IOS Lease, with such rejection being effective as of the Effective Date. At the time of rejection, the Debtor will and make all of the equipment that is the subject of those leases available for retrieval by IOS.

**IOS Option 2:** Under IOS Option 2, IOS will consent to the Debtor's assumption of the IOS Lease and contemporaneous modification of their terms such that a purchase option will be granted to the Debtor and the Debtor will be deemed to have satisfied all of its obligations arising out of or related to the IOS Lease upon its payment to IOS of the sum of $6,000.00 on the Effective Date. Without limiting the generality of the foregoing, the Debtor's payment of the prescribed amount will be in full and final satisfaction of all cure obligations, all future installments of rent and other charges accruing during the term of the lease, and obligations

121201003v2 880207

associated with the exercise of the purchase option under the lease, and upon such payment to IOS all of the equipment that is the subject of the IOS Lease will vest in the Debtor free and clear of all liens and other interests.

**City of Cannon Falls – Development Contract**

The Debtor and the city of Cannon Falls, a Minnesota municipal corporation, are parties to that certain Development Contract dated July 28, 2003, by which the parties agreed on terms related to a real estate development known as Sandstone Ridge. In May, 2005, the Debtor deeded the subject real property to another entity under common ownership with the Debtor. After the Filing Date, Lakeland foreclosed its mortgage on the real property.

The Debtor will reject the Development Contract.

121201003v2 880207